COMMONWEALTH *vs.* JOSE A. PARAPAR
(and a companion case[1]).

Middlesex.   December 5, 1988. — March 13, 1989.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Search and seizure, Probable cause. *Probable Cause.*
*Search and Seizure*, Affidavit, Probable cause.

A Superior Court judge incorrectly allowed criminal defendants' motions
to suppress evidence seized pursuant to a warrant issued on the basis of
information provided by a confidential informant, where the informant's
knowledge was based on his personal observations, where his veracity
was demonstrated by his statements against penal interest, and where
the extensive detail in the informant's statements, verified by police,
indicated the reliability of his information. [321-324]

INDICTMENTS found and returned in the Superior Court Department on October 14, 1987.

A pretrial motion to suppress evidence was heard by *Guy Volterra*, J.

An application for leave to appeal was granted in the Supreme Judicial Court for the county of Suffolk by *Liacos*, J., and the appeal was reported by him.

*Marc C. Laredo*, Assistant Attorney General (*Kevan J. Cunningham,* Assistant Attorney General, with him) for the Commonwealth.

*Manny Daskal* for Jose A. Parapar.

*Richard Landrigan* for Israel Acosta, was present but did not argue.

HENNESSEY, C.J. The Commonwealth challenges an order of a Superior Court judge in Middlesex County suppressing all evidence illegally seized from the defendants, Jose Parapar and Israel Acosta. A single justice of this court allowed the Commonwealth's application, under Mass. R. Crim. P. 15 (b) (2), as amended, 397 Mass. 1225 (1986), for leave to appeal and trans-

---

[1] Commonwealth *vs.* Israel Acosta.

ferred the case to the full court. We now reverse the order allowing the defendants' motion to suppress. Our decision is based upon art. 14 of the Massachusetts Declaration of Rights; any references to Federal case law are for purposes of analogy.

In an affidavit in support of an application for a search warrant, State trooper Carol Harding provided the following information. In July, 1987, Trooper Harding received information that confidential informant "A" was an alleged cocaine distributor. "A" had a record of criminal activity including robbery, larceny, and firearm convictions. As part of an undercover investigation, Trooper Harding made three cocaine purchases from "A." Trooper Harding communicated with "A" via his electronic beeper, a device commonly used to disguise illegal activities. The third purchase, 112 grams, was in "rock" form indicating that it had been broken off of a larger quantity. Trooper Harding arrested "A" for trafficking in cocaine.

After being informed of his rights, "A" told troopers that he had obtained the cocaine at a certain apartment at an address on Auburn Street in Cambridge. "A" stated that "Jose," a Hispanic male, was the occupant of that apartment, that Jose was only at the apartment between 7 and 10 P.M., that Jose was always "strapped," meaning carrying a weapon, and gave the apartment's telephone number. "A" also stated that "Clark" was a runner for Jose, gave Clark's telephone number, said that Clark drove a blue Oldsmobile, said that Clark had a roommate named Donald Hill, and that both Hill and Clark had criminal records.

Telephone company records indicated that the telephone number "A" gave as Jose's was listed, as an unpublished number, to Leticia Sandoval, at the apartment on Auburn Street in Cambridge. The telephone number "A" gave as Clark's was listed as belonging to Clark Caraven, at an address on Hubbard Avenue in Cambridge. Trooper Harding also learned that a 1984 blue Oldsmobile parked in front of the Hubbard Avenue address was registered to Clark, that Donald Hill had telephone service to him at that address, that both Clark and Hill had criminal records, and that Hill had a past record of narcotic violations.

"A" had told Trooper Harding, before the sale, that he wanted the "deal to go down" in Cambridge, because the "stash pad" (a location used by drug dealers to deal from and cut the product) was in Cambridge across the street from the Cambridge police department. Trooper Harding learned that Auburn Street is near the Cambridge police station.

During surveillance of the Auburn Street building, two troopers observed numerous people enter the building and leave a short time later. The troopers opined, based upon the amount of traffic at the location, that there was a large scale drug operation there.

At the same time troopers arrested "A," they arrested confidential informant "B." "B" took a trooper to the same building on Auburn Street, pointed out the door that "A" went into, showed the trooper where "A" parked the car, and said that "A" had gone into the building to get cocaine, and came out with cocaine.

A judge issued a search warrant for cocaine, any controlled substances, and materials and equipment used to manufacture and distribute controlled substances. Troopers executed the warrant, seized cocaine, cash, and drug-related items, and arrested the defendants for trafficking in cocaine. A Superior Court judge granted the defendants' motion to suppress. The Commonwealth appeals.

For an unidentified informant's information to pass muster under art. 14 of the Massachusetts Declaration of Rights, an affidavit must apprise the magistrate of facts and circumstances showing both (1) the underlying circumstances from which the informant concluded that contraband was where he or she claimed it was (the basis of knowledge test), and (2) the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test). *Commonwealth* v. *Upton*, 394 Mass. 363, 375 (1985). See *Spinelli* v. *United States*, 393 U.S. 410, 414-415 (1969); *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964).

Each prong of the *Aguilar-Spinelli* test, the basis of knowledge and the veracity of the informant, must be separately considered and satisfied. If an informant's tip fails to satisfy

one of the two prongs, independent corroboration in the affidavit may supplement the informant's tip to support a finding of probable cause. *Commonwealth* v. *Saleh*, 396 Mass. 406, 410 (1985), citing *Commonwealth* v. *Upton*, *supra*, and *Spinelli*, *supra* at 415.

The basis of knowledge test is clearly satisfied here, and the defendants do not challenge the judge's findings below regarding the first prong. "A" had personally obtained the cocaine which he sold to Trooper Harding on three occasions from Jose at the apartment on Auburn Street in Cambridge. The informant concluded that contraband was at Parapar's apartment based upon his personal observations. *Commonwealth* v. *Valdez*, 402 Mass. 65, 70 (1988). *Commonwealth* v. *Borges*, 395 Mass. 788, 795 (1985).

To satisfy the veracity prong of the *Aguilar-Spinelli* test, the affidavit must establish either the general veracity of the informant or the specific reliability of his statement in this instance. *Commonwealth* v. *Borges*, *supra* at 794. The Commonwealth argues that "A's" statements were against his penal interest and therefore establish his credibility. We have previously stated that an informant's declaration against his or her penal interest is a factor that a magistrate may properly consider in determining probable cause. *Commonwealth* v. *Nowells*, 390 Mass. 621, 626 (1983), citing *Commonwealth* v. *Vynorius*, 369 Mass. 17, 21 (1975). *United States* v. *Harris*, 403 U.S. 573, 585 (1971). The Supreme Court has stated: "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility — sufficient at least to support a finding of probable cause to search." *Id. Commonwealth* v. *Vynorius*, *supra* at 21 (incriminating admissions by one who participates in a crime carry their own indicia of credibility). "A" had made three cocaine sales to Trooper Harding and stated that he had obtained the cocaine from Jose thus indicating he had committed crimes. Compare *Commonwealth* v. *Nowells*, *supra* at 626 (where informant C merely stated that he entered the defendant's apartment "to get [turned on]

with cocaine"). The informant's statement against penal interest directly inculpated him in three trafficking offenses, a possible conspiracy offense, and was supported by established facts.

Furthermore, the extensive detail "A" gave about Jose's operation indicated the reliability of his statement. *Commonwealth* v. *Atchue*, 393 Mass. 343, 348 (1984) (an informant's assertion of "first hand knowledge" coupled with specificity of facts lends credence to informant's statements). "A" identified the exact location, gave Jose's name, described Jose as a Hispanic male, gave Jose's hours, said Jose always carried a gun, and gave Jose's telephone number. "A" gave detailed information about Clark, Jose's runner, including the color and make of his car, his roommate's name, Clark's telephone number, and the fact that Clark and his roommate had criminal records. "A" had also stated before the transactions, that he wanted the deal to "go down" in Cambridge, near the "stash pad" which was across the street from the Cambridge police department.

Troopers verified the majority of the information given to them by "A" and thereby corroborated "A's" statements. Troopers learned that the telephone number "A" gave as Jose's was indeed listed to the apartment he had specified on Auburn Street. They found that the building on Auburn Street, the alleged "stash pad," was near the Cambridge police department. Troopers saw a blue Oldsmobile, registered to Clark Caraven, parked outside the Hubbard Avenue address where telephone records indicated telephone service for Clark Caraven. Troopers also verified Clark's roommate's name and criminal record.

Troopers also conducted surveillance of the building on Auburn Street which further corroborated "A's" statement. The troopers observed numerous persons enter the building and leave a short time later, suggestive of a large scale drug operation. *Commonwealth* v. *Robinson*, 403 Mass. 163, 166 (1988) (stating that independent police corroboration can compensate for deficiencies in either or both prongs of the *Aguilar-Spinelli* test).

The statements of informant "B" further corroborated "A's" statement. "B" took a trooper to the building on Auburn Street

and told that trooper that "A" had gone to that building to get cocaine, and had obtained cocaine. "B" also indicated the door "A" had entered and showed the trooper where "A" had parked while at the building. *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 (1983) (unnamed informants' detailed statements corroborating each other in significant detailed respects regarding criminal conduct establish the veracity of informants).

We conclude that the affidavit established probable cause to issue a search warrant. The order granting the defendants' motion to suppress is reversed and the case is remanded to the Superior Court for further proceedings.

*So ordered.*