COMMONWEALTH vs. RUDY RAPHAEL WATSON.

No. 92-P-369.

Middlesex. December 7, 1993. - March 21, 1994.

Present: WARNER, C.J., KASS, & SMITH, JJ.

Constitutional Law, Search and seizure, Probable cause. Search and
    Seizure, Affidavit, Probable cause, Consensual entry by police, Forcible
    entry by police. Probable Cause. Controlled Substances.

Probable cause for the issuance of a search warrant was provided by two
    informants' mutually corroborative information, buttressed by the in-
    formation gathered during police surveillance. [254-257]
At the trial of an indictment for trafficking in cocaine, the judge correctly
    concluded that the police announced their identity and purpose before
    entering an apartment after the defendant had opened the door in re-
    sponse to a police officer's knock. [257-258]
At the trial of an indictment for trafficking in cocaine, ample evidence was
    presented permitting the jury to infer that the defendant had construc-
    tive possession of a hidden cocaine stash. [258-260]

INDICTMENT found and returned in the Superior Court De-
partment on February 12, 1991.

A pretrial motion to suppress evidence was heard by *Rob-
ert H. Bohn, Jr.*, J., and the case was tried before him.

*Bruce W. Carroll* for the defendant.

*Daniel A. Less*, Assistant District Attorney, for the
Commonwealth.

WARNER, C.J. A Superior Court jury convicted the de-
fendant of trafficking in cocaine in an amount over twenty-
eight grams (G. L. c. 94C, § 32E[b][2]). Forty-three small
plastic bags containing 31.20 grams of fifty-five percent pure
cocaine, along with other physical evidence, were seized dur-
ing a search executed pursuant to a warrant. On appeal, the
defendant contends that his motion to suppress the evidence
should have been allowed because (1) the affidavit supporting
the search warrant failed to establish probable cause to be-

lieve that cocaine would be found in the apartment searched, and (2) the police violated the conditions of the warrant by failing to knock and announce their presence. He also argues that his motion for a required finding of not guilty should have been granted on so much of the indictment as alleged trafficking because insufficient evidence was presented to prove that he had possession of the forty-three bags of cocaine seized during the search. We affirm.

*The affidavit.* The affidavit supporting the search warrant contained information provided by two unnamed informants, "A" and "B," and by police surveillance. During the second week of January, 1991, Inspector Charles Linehan of the Cambridge police narcotics unit relayed the following information to the affiant, Sergeant Ray J. Martinez of the Somerville narcotics unit.[1] "A" had previously provided information leading to arrests and convictions for selling cocaine. He had twice given telephone numbers, automobile license numbers, and addresses leading to the seizure of cocaine, the arrests of named individuals, and one conviction. "A" reported that "Gaga," who sold drugs from a house at 30 Hanson Street in Somerville, told "A" that he had a good source of cocaine. "A" could call a certain telephone number to make a buy. "A" provided Gaga's telephone number and described Gaga as a young Hispanic man, approximately twenty to twenty-five years old, five feet eight or nine inches tall, of medium build.

"B" telephoned Sergeant Martinez within forty-eight hours before his application for a search warrant.[2] Martinez recognized "B" 's voice as belonging to someone who had previously given him information about cocaine dealing in Somerville. "B" said that cocaine was being sold from the second-floor apartment of a house at 30 Hanson Street and that he had purchased cocaine there during the last couple of

[1] A law enforcement officer who provides information is presumed credible. See *United States* v. *Ventresca*, 380 U.S. 102, 111 (1965); *Commonwealth* v. *Vynorius*, 369 Mass. 17, 22 (1975).

[2] The application was made on the date the warrant was executed, January 25, 1991.

days. He would telephone, ask for Gaga, place his order, and drive by to pick up the drugs. He gave the same telephone number that "A" had given, and described Gaga as a Hispanic male, five feet seven or eight inches tall, about one hundred sixty pounds, with a slight mustache, in his mid-twenties. A second Hispanic male, about five feet ten inches tall, very thin, with a small mustache, in his early twenties, was in the apartment as well and spoke only in Spanish. "B" described the apartment as sparsely furnished, with a couch and small glass coffee table in the living room, a television in the kitchen, and another unfurnished room.

After receiving Inspector Linehan's information, Sergeant Martinez verified that the telephone number "A" provided was listed to Maria Lora at 30 Hanson Street. He and his partner then began a two-week surveillance of the building, which contained three apartments. Both day and night they saw automobiles double parking, people running inside, then coming out a few minutes later, sometimes via the back exit, and driving off. They all went to the second-floor apartment, which could be seen from the street. Two Hispanic-looking men frequently entered the building and remained there. One fit "A" 's and "B" 's descriptions of Gaga.

An affidavit based on information provided by a confidential informant must satisfy the two-pronged test set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). *Commonwealth* v. *Upton*, 394 Mass. 363, 377 (1985). Article 14 of the Declaration of Rights of the Massachusetts Constitution requires that the affidavit "inform the magistrate of the underlying circumstances which support both the informant's basis of knowledge and his reliability or veracity." *Commonwealth* v. *Spano*, 414 Mass. 178, 184 (1993). Both prongs of the *Aguilar-Spinelli* test must be independently satisfied. Independent police corroboration in the affidavit may be used to buttress a tip that fails to satisfy either or both prongs of the test. *Commonwealth* v. *Upton*, 394 Mass. at 376. *Commonwealth* v. *Parapar*, 404 Mass. 319, 321-322 (1989).

"B" 's recitation of the procedure for obtaining drugs, including Gaga's telephone number, his own recent drug buys, the physical descriptions of Gaga, his accomplice, and of the apartment, all indicated that his information was based on personal observation. "B" 's tip satisfied the "basis of knowledge" prong of the *Aguilar-Spinelli* standard. See *Commonwealth* v. *Parapar*, 404 Mass. at 322. The defendant does not argue any inadequacy in this regard. Indicia of "B" 's veracity, on the other hand, are weak. The affiant's general statement that "B" had previously given him information about drug dealing is insufficient to establish his veracity. See *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988); *Commonwealth* v. *Santana*, 411 Mass. 661, 664-665 (1992). Nor does "B" 's assertion that he had purchased drugs from Gaga gain credibility as a statement against his penal interest. There is no reason to believe that this anonymous informant would realistically have feared prosecution for the offense. See *Commonwealth* v. *Allen*, 406 Mass. 575, 579-580 (1990); *Commonwealth* v. *Melendez*, 407 Mass. 53, 56-58 (1990); *Commmonwealth* v. *Filippidakis*, 29 Mass. App. Ct. 679, 685 (1991). The affidavit does, however, establish the reliability of "B" 's tip through corroborating information provided by the police investigation and by "A."

The police observed a pattern of short visits to the second-floor apartment suggestive of drug trafficking. See *Commonwealth* v. *Parapar*, 404 Mass. at 323; *Commonwealth* v. *Soto*, 35 Mass. App. Ct. 340, 344 (1993). They confirmed that a man fitting "B" 's description of Gaga, and another man fitting his description of Gaga's partner, remained in the building for long periods of time. They also confirmed the telephone number "B" provided, which was not registered in the defendant's name, and thus not readily available to the general public. Contrast *Commonwealth* v. *Motta*, 34 Mass. App. Ct. 921, 922 (1993), where the police corroborated only information "easily obtainable by an uninformed bystander."

The correspondence between "A" 's and "B" 's tips further buttressed the reliability of "B" 's information. "A" corroborated "B" 's report of the operation's location, the method of

obtaining the drugs, the dealer's physical description,[3] pseudonym, and telephone number. "A" was a credible informant, having supplied information leading to drug seizures, arrests, and a conviction. See *Commonwealth* v. *Byfield*, 413 Mass. 426, 431 (1992); *Commonwealth* v. *Mendez*, 32 Mass. App. Ct. 928, 929-930 (1992).[4] The weakness in "A"'s tip lay in the affidavit's failure to state when "A" had obtained his information. Since drugs are easily movable, the tip must give reason to believe that the contraband will be found on the premises to be searched at the time the warrant issues. See *Commonwealth* v. *Reddington*, 395 Mass. 315, 322-323 (1985). Both "B"'s tip, which reported criminal activity occurring within four days of the search, and the police surveillance, which occurred within a few days of the search,[5] were sufficiently recent to indicate that the drugs would be at the apartment at the time of the search. See *Commonwealth* v. *DiStefano*, 22 Mass. App. Ct. 535, 540-541 (1986), and cases cited. These sources supported "A"'s tip by indicating that the activities "A" reported had occurred recently.

The informants' mutually corroborative information, buttressed by the information gathered during police surveillance, provided probable cause for the search. See *Commonwealth* v. *Rojas*, 403 Mass. at 488, quoting from *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 (1983) (tips that do not alone provide probable cause for the issuance of a search warrant may meet *Aguilar-Spinelli* standards if they contain detailed mutually corroborative information); *Commonwealth* v. *Parapar*, 404 Mass. at 323-324 (unnamed informant's tip, corroborated by another unnamed informant and by police investigation, established probable cause);

---

[3]The descriptions of Gaga differed slightly in that "B" mentioned a slight mustache and "A" did not.

[4]During oral argument the defendant's attorney remarked that the two informants could have actually been the same person. No sustained argument was made in this regard. If, in fact, "A" and "B" were the same person, "B" would easily have met the test for veracity.

[5]"B" telephoned Martinez with his information within two days of the search and reported making drug buys during the two days previous to his call. The police surveillance began during the second week of January and lasted for two weeks.

*Commonwealth* v. *Luce*, 34 Mass. App. Ct. 105, 110 (1993) (three unnamed informants' mutually corroborative information established probable cause).[6]

*The knock and announce provision.* The defendant contends that the police officers failed to knock and announce their identity and purpose before executing the warrant as they were required to do. The judge conducted an evidentiary hearing on the motion to suppress, and we accept his findings of fact absent clear error. *Commonwealth* v. *Harmon*, 410 Mass. 425, 428-429 (1991).

The motion judge found that on January 25, 1991, Somerville police Detective Hyde arrived at 30 Hanson Street, apartment number 2, for the alleged purpose of making a cocaine buy. He had made two previous undercover buys there and had arranged the third transaction by telephone. Several other Somerville police officers had arrived earlier and were waiting on the third floor landing above the apartment. When everyone was in position, Detective Hyde knocked on the door, and the defendant opened it. Immediately thereafter, while Detective Hyde remained in the hallway, one of the other police officers yelled, "Somerville Police. We have a warrant." He then pushed Hyde into the apartment. The other police officers followed.[7] The officers

---

[6] Curiously, as discussed below, the affidavit offered in support of the application for the search warrant failed to state that a Somerville police detective had made two undercover cocaine buys at the Hanson Street apartment within three days of the application. "Standing alone, [the report of two controlled drug buys occurring within eight days of a search warrant application] provided probable cause" for a search of the apartment. *Commonwealth* v. *Luna*, 410 Mass. 131, 134 (1991). See also *Commonwealth* v. *Benlien*, 27 Mass. App. Ct. 834, 838-839 (1989), discussing controlled buys as supporting the issuance of search warrants. In this case, the undercover buys, made by a police officer whose credibility was not in question, would have provided strong support for the issuance of the warrant.

[7] Somerville police officer Paul Timmins testified at the motion hearing that the officers could not see the door to the second-floor apartment from the area on the third floor where they had stationed themselves. By prearrangement they waited for the sounds of Detective Hyde climbing the stairs, coughing, knocking, and the door opening. They then quickly moved toward the second-floor apartment. Detective Hyde testified that the defendant began to shut the door after the police announced their presence.

all had identification badges hanging on neck chains. The identification badges, according to Detective Hyde's testimony at the motion hearing, are worn around the police officers' necks so that they can be seen clearly.

It is the general rule that police officers must knock and announce their identity and purpose, and be refused admittance, before they may forcefully enter a dwelling to execute a search warrant. *Commonwealth* v. *Cundriff*, 382 Mass. 137, 139-146 (1980), cert. denied, 451 U.S. 973 (1981). "The reason for the knock and announce rule is the desirability of 'decreasing the potential for violence [initiated by residents in response to a sudden and unexpected invasion of their premises, provoking further retaliatory violence by the police], protection of privacy, and the prevention of unnecessary damage to homes.'" *Commonwealth* v. *Sepulveda*, 406 Mass. 180, 182 (1989), quoting from *Commonwealth* v. *Cundriff*, 382 Mass. at 146. Detective Hyde's ruse was a permissible method of enticing the defendant to open the door. See *Commonwealth* v. *Goggin*, 412 Mass. 200, 202 (1992) ("A consensual entry by the police, even if obtained by ruse or trickery, will not violate the rule"). The police officer's announcement after the defendant had opened the door and before the police entered, coupled with the fact that the officers wore badges around their necks, alerted the defendant to their identity and purpose prior to their entry. See *ibid.* "Since the police did not force entry without appropriate identification and an announcement, the terms of the warrant were satisfied." *Id.* at 203.

*Sufficiency of the evidence.* A search of the apartment revealed a large plastic bag containing forty-three smaller plastic bags of cocaine hidden in the false bottom of a bedroom closet door. The defendant argues that insufficient evidence was presented to prove that he knew of or had control of the hidden stash, requisites for proving his constructive possession of the drugs. See *Commonwealth* v. *Nichols*, 4 Mass. App. Ct. 606, 613 (1976). He contends that the evidence proved only that Luis Gonzalez controlled the stash because Gonzalez's personal papers were found in the apart-

ment and because Gonzalez did most of the talking during Detective Hyde's undercover buys. Possession need not be exclusive, and joint possession may be proved circumstantially. *Commonwealth* v. *Dinnall*, 366 Mass. 165, 168-169 (1974). Viewing the evidence in the light most favorable to the Commonwealth, the jury could reasonably infer that the defendant had constructive possession of the hidden cocaine. *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409-410 (1989). *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991).

Detective Hyde had made two recent cocaine buys at the sparsely furnished Hanson Street apartment. During the first buy on January 22, the defendant handed Hyde a small, clear plastic bag of cocaine, and Gonzalez took the forty-dollar payment. A second buy took place the following day, with Gonzalez handing out the cocaine and the defendant taking the money. At that time, the defendant and Gonzalez told Detective Hyde that cocaine was available twenty-four hours a day. Hyde need only call first. Detective Hyde testified that, while most of the conversation was with Gonzalez, who apparently spoke better English, the defendant spoke some English and participated. The day the warrant was executed, Detective Hyde arrived for a third prearranged drug buy. The defendant opened the door. In his hand was a clear plastic bag, tied at the top, containing a white powdery substance. The bag appeared identical to those Detective Hyde had purchased during his previous undercover buys at the Hanson Street apartment.

Strong evidence permitted the reasonable inference that the defendant knew of the hidden stash and had access to it. He had completed two drug sales at the apartment within four days and was prepared for a third on the day of the seizure. Only he and Gonzalez were present each time. The conversation with Detective Hyde showed the defendant's familiarity with the procedure for obtaining drugs and his knowledge that drugs could be obtained from the apartment at any hour of the day or night. The sparse furnishings of the apartment indicated that it was a stash house, used solely for

storing and selling drugs.[8] See *Commonwealth* v. *Arias*, 29 Mass. App. Ct. at 619. The defendant's active participation in the transactions and in the planning of future buys indicated that both he and Gonzalez could produce cocaine from the hidden stash on demand. Moreover, the defendant had sold Detective Hyde cocaine in packages similar to those found hidden in the bedroom closet, further linking him to the hidden stash. Compare *Commonwealth* v. *Pratt*, 407 Mass. 647, 652-653 (1990); *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 495-497 (1994) (both holding that the defendant's possession of similar drugs in similar packages linked him to seized drugs). See also *Commonwealth* v. *Rivera*, 31 Mass. App. Ct. 554, 556-557 (1991). Ample evidence was presented permitting the jury to infer that the defendant had constructive possession of the cocaine stash.

*Judgment affirmed.*

---

[8]The apartment's back bedroom was unfurnished; a front bedroom contained only a mattress and a television; the living room, a sofa and coffee table. An expert testified at trial that the apartment was a stash house.