Kern, Leila R., J.
Defendant was indicted in November of 2010 on the charge of Trafficking in Cocaine over 14 grams. Defendant now moves to suppress the physical evidence obtained by police when they searched the defendant’s apartment. The basis for defendant’s motion is that the police conducted a warrantless search, unsupported by probable cause, which violates the defendant’s rights against unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution and Articles XII and XTV of the Massachusetts Declaration of Rights. For the reasons contained herein, defendant’s motion is DENIED.
BACKGROUND
On Friday, August 13, 2010, police officers were conducting surveillance of 188 Broadway in Somer-ville, on suspicion of cocaine trafficking. Police officers based such suspicion on tips received from two informants, CS-1 and CS-2. At that time CS-1 had worked with police for over three years on drug-related investigations that had led to arrests and at least one conviction. CS-2 had not worked with police before and therefore had no investigatoiy track record with them. CS-1 told police that the defendant sold cocaine from his residence at 188 Broadway, and at nearby bars and liquor stores. Both CS-1 and CS-2 said they had purchased cocaine from the defendant in the past.[1] CS-2 told police about a “preferred customer” and described him as a tall white male in his 40s, who worked as some kind of “laborer,” and typically arrived at 188 Broadway in a red car on Thursdays or Fridays, depending on his pay schedule. While police were watching the residence, they observed the defendant exit 188 Broadway and slide a slip of paper into the doorway before returning to the second floor of the building. Later, police observed an individual (later identified as James Downey) matching CS-2’s description,[2] enter 188 Broadway, where he remained for five to seven minutes before returning to the front passenger’s seat of a red car parked in a nearby parking lot. Police officers approached the car and observed a white powder on Downey’s upper lip and nose. Officers also testified that Downey was jittery and clenched his fist as if to fight. Following these observations, police ordered Downey out of the car, read him his Miranda rights (which he waived), and searched him, finding seven to eight clear bags containing what appeared to be cocaine. Downey told officers he had just come from meeting with the defendant and that he had purchased the substance in the bags from the defendant for $300.
When the defendant exited 188 Broadway later that day he was taken into custody and gave consent for police to search his apartment, #3 on the second floor of 188 Broadway, by signing a “Consent to Search” form. The defendant also waived his Miranda rights. There were three to four units on the second floor of 188 Broadway, connected by a common hallway. Adjacent to the hallway was a bathroom, determined by police to be shared by all the tenants of the building because the defendant’s apartment had no bathroom of its own. A search of the bathroom revealed a hair spray can that contained small baggies of what appeared to be cocaine. The search of apartment #3 revealed a box of latex gloves and $7,400 in cash. A search of a trash can in the hallway revealed a box of sandwich baggies and an item of mail that was addressed to a woman whom the defendant said was his girlfriend.
DISCUSSION Standing to Challenge the Search of “James Downey”
Defendant challenges the search of James Downey. He lacks standing to do so. In Jones v. United States, *563 the Supreme Court decided that in certain circumstances, where possession is an essential element of the charged crime, a defendant would have automatic standing to challenge the search and seizure of that evidence. Jones v. United States, 362 U.S. 257 (1960); see also Commonwealth v. Amendola, 406 Mass. 592 (1990). The Supreme Court made this decision because often, if the defendant were to claim standing to challenge the search, he/she would essentially be admitting to the possession of which he/she is charged, which would violate Constitutional rights. Jones, 362 U.S. at 263-64. In order for the defendant to have automatic standing, the defendant must be charged with a crime “in which possession of the seized evidence at the time of the contested search is an essential element of guilt.” Amendola, 406 Mass. at 601. “Possession implies ‘control and power,’ . . . exclusive or joint ... , or, in the case of ‘constructive possession,’ knowledge coupled with ability and intention to exercise dominion and control.” Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989), quoting from Commonwealth v. Rosa, 17 Mass.App.Ct. 495, 498 (1984).
In this case, the defendant is charged with trafficking in cocaine based on the amount of cocaine and other evidence found upon searching his apartment and the bathroom he shares with his co-tenants. The defendant is not, however, charged with such a crime based on the cocaine found on James Downey’s person. Therefore, possession of the cocaine seized from the search of Downey is not an essential element of the crime with which the defendant has been charged. See Commonwealth v. Garcia, 34 Mass.App.Ct. 386, 390-91 (1993) (the court declined to grant standing to the defendant when the charges alleged distribution and not possession). That court went on to say, “The essence of our holding on this point is that once possession or a claim of right to possession of the contraband ends, so does the standing to contest the search.” Id. at 390. As in Garcia, the defendant here seeks to challenge the search of a person to whom he allegedly sold drugs. The defendant’s possessory interest and claim of right to the cocaine found on Downey ended at the time of the sale, as did his standing to challenge the search.[3]
Probable Cause to Search “James Downey”
Assuming, arguendo, that the defendant did have standing to challenge the search of James Downey, there was sufficient probable cause to support the search. Evidence obtained following an illegal stop and search constitutes “fruits” of the illegal search and is inadmissible at trial. Wong Sun v. United States, 371 U.S. 471, 486 (1963). When determining if a police officer has probable cause to stop and search an individual based on informant information, a totality of the circumstances analysis is used. Illinois v. Gates, 464 U.S. 213, 230 (1983). In Gates, the Supreme Court decided that the two-pronged Aguilar-Spinelli test should not be applied rigidly. In relevant part the Court stated:
[A]n informant’s “veracity,” “reliability,” and “basis of knowledge” are all highly relevant in determining the value of his [detective’s] report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case . . . they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is “probable cause” to believe that contraband or evidence is located at a particular place. Illinois v. Gates, 464 U.S. 213, 230 (1983).[4]
The Supreme Judicial Court has determined that Article 14 of the Massachusetts Declaration of Rights requires a more structured approach than is laid out in Gates. See Commonwealth v. Parapar, 404 Mass. 319 (1989). In Parapar, the court determined that both an informant’s basis of knowledge and veracity “must be separately considered and satisfied.” Id. at 321-22. The court goes on to say, however, that if an informant’s tip fails to satisfy one of these prongs, independent corroboration by police officers may supplement the informant’s tip to support probable cause. Id. See also Commonwealth v. Cast, 407 Mass. 891, 896 (1990) (independent police corroboration of an informant’s tip can fill in any deficiencies in either or both prongs, and thus satisfy the art. 14 probable cause requirement). This approach demonstrates the court’s belief that protecting the rights of Massachusetts citizens required a more structured approach than the Gates totality of the circumstances.
Applying this approach to the present case, there was probable cause to believe that James Downey had contraband or evidence. With respect to “basis of knowledge,” it is important to determine whether or not the informants had first-hand knowledge of the information they provided. In this case, both CS-1 and CS-2 attest to having purchased cocaine from the defendant in the past. Therefore the information from both informants is most likely obtained through personal knowledge. See Commonwealth v. Montanez, 410 Mass. 290, 299-300 (1991) (an informant who had previously bought drugs from the defendant satisfied the basis of knowledge prong). CS-2’s information regarding the individual who would routinely purchase drugs from the defendant at 188 Broadway was specific enough that upon the police officer’s corroboration (to the last detail) of the individual’s appearance, car, and day of arrival, it is clear that CS-2’s knowledge came from first-hand experience.[5] Therefore, the basis of knowledge aspect of the test is satisfied.
With respect to the veracity of the informants’ tips, CS-1 had a proven investigatory record with the police officers; CS-2 had no record whatsoever. CS-l’s satisfaction of the veracity prong is uncontested while *564 CS-2’s remains in dispute. When, however, CS-2’s description of the individual who routinely purchased drugs from the defendant proved to be entirely accurate, it was reasonable for the police officers to infer that CS-2’s other information—that the individual would have purchased cocaine—was similarly reliable. See Draper v. United States, 358 U.S. 307, 313 (1959) (with every bit of the physical description being personally verified by the police officer, there were “reasonable grounds” for the officer to believe that the remaining unverified information was likewise true). The information did more than just help police correctly identify the person to whom the informant was referring because it provided specific enough information with respect to behavior for the police to test the informant’s knowledge and credibility. See Florida v. J.L., 529 U.S. 266, 266 (2000) (a merely physical description, without more, is not sufficient for probable cause to stop an individual).
The informants’ tips were corroborated by police observations. Police observed what appeared to be, in their experience, cocaine, on Downey’s upper lip and nose when they approached him. That, coupled with CS-2’s tip that Downey would have purchased cocaine inside 188 Broadway and Downey’s “jittery” behavior, added to probable cause to believe Downey had contraband or evidence on him. Therefore, the stop and search of Downey was fully supported by probable cause.
Consent Searches
Consent searches are an exception to the warrant requirement. A search of a person or place may be conducted without a warrant so long as the search is done with the free and voluntary consent of a person possessing the ability and authority to give the consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The fact that a defendant is under arrest does not preclude the finding that consent to search was given voluntarily. Commonwealth v. Franco, 419 Mass. 635, 642. Police are not required to obtain consent in writing. See United States v. Barnett, 989 F.2d 546, 555 (1st Cir. 1993). See also United States v. Chaidez, 906 F.2d 377, 382 (8th Cir. 1990) (oral consent is valid even absent written consent); United States v. Castillo, 866 F.2d 1071, 1082 (9th Cir. 1988) (refusal to sign a consent form does not preclude voluntariness). Further, voluntariness is a subjective test, including factors such as age, experience, education, knowledge of refusal to consent, and intoxication or influence of drugs. Commonwealth v. Harmond, 376 Mass. 557, 562 (1978). Defendant is above the age of majority, knew of his right to refuse (included in the consent form), and, according to officers’ testimony, was not under the influence of drugs or alcohol at the time. The existence of the written consent form that the defendant signed is additional evidence that indicates that his consent was voluntaiy even though he was under arrest at the time.
Search of Defendant’s Trash
While there appears to be confusion as to the location of the garbage can from which physical evidence was recovered, any evidence obtained from the garbage can is admissible in court. If the garbage can was located within the defendant’s apartment it was included within the scope of the consented-to search of the entire apartment. If the garbage can was located in the hall, the defendant had no expectation of privacy in it or its contents. See California v. Greenwood, 486 U.S. 35 (1988) (the Fourth Amendment does not prohibit warrantless search and seizure of trash left for collection outside the curtilage of a home because there is no reasonable expectation of privacy). Even considering the fact that defendant’s trash may not have been left for collection in the hallway, the defendant still had no reasonable expectation of privacy. Other members of the public have access to the hallway and thus the trash left therein. Any other tenant, guests of tenants, maintenance staff—to name a few— would be able to look through the defendant’s trash, just as the police did. Therefore, the physical evidence obtained from the trash can is admissible.
Search of the Common Bathroom
The Supreme Judicial Court has held that a war-rantless search of a common area of a multi-tenant building is valid and does not violate any protected rights. Commonwealth v. Thomas, 358 Mass. 771 (1971).[6] In Thomas, the police conducted a warrant-less search of the basement of an apartment building, which was available for use by the tenants of all six (6) apartments and not for use by the general public. Thomas, 358 Mass. at 773. Since Thomas did not have exclusive control over the basement, he had no expectation of privacy in it. Id.at 774. Thomas is directly analogous to the case at hand. Here, the common space is a bathroom, rather than a basement, but the analysis is the same. The defendant in this case shared the bathroom with other tenants of his building and therefore had no exclusive control and no expectation of privacy in the space.
Defendant argues that the character of the common space in question, a bathroom, requires that a high level of privacy be reasonably expected, even though the space is shared with others. Commonwealth v. Montanez lays out the three things to consider when determining the character of a space: (1) whether the defendant owned the building; (2) whether the defendant controlled access to the area; and (3) whether the area was freely accessible by others. Commonwealth v. Montanez, 410 Mass. 290, 301-02 (1991). The defendant did not own or control access to the bathroom and it was freely accessible, at a minimum, to other tenants in the building. Therefore, the defendant cannot hold any reasonable expectation of privacy as to the bathroom itself.
*565 ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s Motion to Suppress is DENIED.

No information as to whether or not the informants had purchased cocaine while inside 188 Broadway.

This individual was a white male who appeared to be in his 40s and was dressed as a “construction worker” wearing a white t-shirt and paint-spattered shorts. Downey arrived in a red car that was parked in a nearby parking lot.

See also Commonwealth v. Randolph, 56 Mass.App.Ct. 1108, 1108 (2002) (possession is not an element of distribution and automatic standing principles do not apply); Commonwealth v. Placido, 50 Mass.App.Ct. 1114, *3 (2001) (defendants charged with trafficking did not have standing to challenge the search of the alleged buyer).

Commonwealth v. Upton, 390 Mass. 562, 568 (1983) (‘The informant’s veracity and the basis of his knowledge are still important but, where the tip is adequately corroborated, they are not elements indispensible to a finding of probable cause”).

defendant, citing Commonwealth v. Avalo and Commonwealth v. Brown, argues that the information provided by the informants was not sufficient to establish basis of knowledge. In Avalo, the informant gave detailed information regarding the physical characteristics of the defendant and correctly described the time and location of the defendant’s arrival. Commonwealth v. Avalo, 37 Mass.App.Ct. 904, 906 (1994). That court, in determining that the information was insufficient for probable cause, was careful to point out that the informant’s tip was lacking because it failed to give a description of the vehicle in which the defendant would be travelling and because the detail regarding the criminal activity itself was not adequately detailed. Id. In the present case, the informant did describe the vehicle in which James Downey would be arriving. Furthermore, the informant alleged that Downey would be purchasing cocaine from the defendant. Since both informants had purchased cocaine firom the defendant in the past the tip provided by the informants is sufficient to show basis of knowledge. It is also important to note that the informants had not purchased cocaine from the defendant at his residence (188 Broadway) as most of his deals (according to the informants) occurred a short distance from there. The fact that CS-2 had knowledge of the defendant’s address indicates personal knowledge and satisfies the basis of knowledge prong. Brown focuses on whether or not the information provided was sufficient to show that it was based on something more than a “casual rumor circulating in the underworld.” Commonwealth v. Brown, 31 Mass.App.Ct. 574, 577 (1991). Here, the informants’ basis of knowledge was that they had purchased cocaine from the defendant in the past; they knew he sold drugs not based on rumor, but rather because they themselves had purchased drugs from him.

See also United States v. Hawkins, 139 F.3d 29, 32 (1st Cir.), cert. denied, 525 U.S. 1029, 119 (1998) (“It is now beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building”); Commonwealth v. Pacheco, 21 Mass.App.Ct. 565 (1986) (police were allowed to search a basement used in common by all tenants of the building, the door to which was partially open).