COMMONWEALTH *vs.* JOHN D. SHEA, JR.

No. 89-P-256.

Plymouth. September 14, 1989. - November 9, 1989.

Present: DREBEN, KAPLAN, & FINE, JJ.

*Search, and Seizure,* Affidavit, Probable cause, Warrant. *Probable Cause. Constitutional Law,* Search and seizure, Probable cause, Clerk of court. *Controlled Substances. Evidence,* Scientific test. *Practice, Criminal,* Loss of evidence by prosecution.

A police officer's affidavit, based on the direct observations of two unnamed informants and containing averments that the informants had supplied information leading to past criminal convictions, satisfied the "basis of knowledge" and "veracity" tests of *Commonwealth* v. *Upton,* 394 Mass. 363 (1985), and was sufficient to support the issuance of warrants to search a certain place of business and residence. [30-32]

The circumstance that a certain assistant clerk-magistrate, who issued search warrants for a named individual's residence and place of business, was the same person who, in his capacity as a part-time bail commissioner, set the individual's bail following his arrest did not render the warrants invalid on the ground that the issuing magistrate must be taken to have been fatally biased or lacking impartiality. [32-33]

In a prosecution for trafficking in a quantity of cocaine contained in nine one-eighth ounce bags seized at the defendant's residence, representative laboratory testing of the bags was sufficient to support the issuance of a certificate acceptable as prima facie evidence of their contents. [33-34]

In a prosecution for trafficking in cocaine, there was no ground to believe that the defendant was prejudiced by the Commonwealth's unintentional loss of a certain State police laboratory worksheet. [34]

INDICTMENT found and returned in the Superior Court Department on May 28, 1986.

A pretrial motion to suppress evidence was heard by *George N. Hurd, Jr.,* J., and the case was heard by *William H. Carey,* J.

*Daniel Patrick Leonard* for the defendant.

Commonwealth *v.* Shea.

*Linda M. Fleming*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. In this drug case, two warrants issued for search of premises occupied by the defendant Shea, one for his business offices at 45 Court Street, Plymouth, the other for his residence at 169 Rocky Hill Road, Plymouth. Executing the warrant in connection with the business premises, the police found on the defendant's person a brown vial containing 0.28 gram of 76% pure cocaine. When he was informed of the second warrant, the defendant said the stash the police were looking for could be found at his residence, and, in fact, search there under the warrant, with the defendant assisting, recovered nine one-eighth ounce bags of cocaine at 37% strength, a total weight of 30.9 grams, and, in addition, two small quantities of marihuana and sundry cocaine paraphernalia.[1] A motion to suppress all the evidence was denied by a judge of the Superior Court after hearing. At a nonjury trial, the defendant was convicted of trafficking in cocaine of a weight in excess of 28 but less than 100 grams, possession of cocaine, and possession of marihuana. The defendant was sentenced for the trafficking; the indictments for possession of cocaine and marihuana were placed on file with the defendant's consent.

Upon the present appeal, the defendant attacks the negative ruling on the pretrial motion to suppress and also claims that there were errors at trial.

1. *Motion to suppress.* (a) *Sufficiency of affidavit supporting the warrants.* Officer William E. Curtis of the Plymouth police, the affiant, describes his considerable experience in various investigations and prosecutions. In mid-December, 1985, he talked with an unnamed "reliable informant" who had furnished information that had "led to convictions in the past in Plymouth District Court." The informant said he[2] had been told that the defendant was selling cocaine from his residence on Rocky Hill Road and from his "tanning salon" on Court Street; also he (the informant) had seen cocaine

---

[1] Guns were also found and surrendered to the police.
[2] To be read hereafter as "he/she" as in the text of the affidavit.

several times in the last few months in the possession of "different subjects" who claimed to have purchased it from Shea either at his house or place of business. About January 24, 1986, Curtis had a further conversation with this informant. He said he had been present at Shea's business on at least two occasions in the last month: he saw Shea sell cocaine in his office in the tanning salon and again from a locked desk drawer in the downstairs office of "Corinthian Pools," also owned by Shea and located at the same address. Curtis added that since mid-January, 1986, he had conducted a "loose surveillance" of the tanning salon and had observed three subjects entering and leaving the building whom he believed to be involved in the use of narcotics, and who were being actively investigated by the police department.

About February 2, 1986, Sergeant Pomeroy of the Plymouth police told Curtis he had just spoken with a "reliable informant whose information has led to convictions in court in the past" (a second informant) and that person told him that he had been present at Shea's residence within the past three days and observed cocaine being sold there.

Concluding the affidavit, Curtis states that about February 4, 1986, he talked with the first informant who said he[3] had just spoken with Shea, and Shea said he would be picking up a quantity of cocaine later in the week and would have a supply on hand for the coming weekend.

The warrants issued on February 5, 1986, a Wednesday, and were executed on Saturday, February 8.

We examine the affidavit under the regime of *Commonwealth* v. *Upton*, 394 Mass. 363 (1985) (*Upton II*), which carries forward the familiar principles of *Aguilar* v. *Texas*, 378 U.S. 108 (1964), and *Spinelli* v. *United States*, 393 U.S. 410 (1969). Each informant reports his direct observations of sales of cocaine by the defendant, observations by the first informant at the place of business, and by the second at the residence. In addition, the first informant hears direct from the defendant his plans for procuring cocaine. This is ade-

---

[3]The affidavit says "they" but we take it that "he/she" was intended.

quate to satisfy for each informant the "basis of knowledge" requirement of the cited authorities. And see *Commonwealth* v. *Valdez*, 402 Mass. 65, 70 (1988); *Commonwealth* v. *Carrasco*, 405 Mass. 316, 321 (1989).

As to the "veracity" requirement, there are averments regarding the informants that they have supplied information which has led to past convictions.[4] In *Commonwealth* v. *Malone*, 24 Mass. App. Ct. 70, 72 (1987), the question was raised, but not answered, whether veracity would be established by a statement in the affidavit offered to a magistrate that an unnamed informant had furnished information leading to an arrest. It has lately been held that that does not suffice. See *Commonwealth* v. *Rojas*, 403 Mass. 483, 486 (1988). An arrest may turn out to be a dud, not resulting in a conviction, which would suggest that the underlying representation was awry and not a proof of the trustworthiness of the informant who made it.[5] An inference of trustworthiness of an informant is strengthened where the information he furnished has led, as here, to actual convictions;[6] specificity about the convictions, which would trench more or less on the informant's anonymity, is not demanded. It appears from decisions around the date of *Rojas* and afterward that there is no disposition to equate convictions with arrests and that "information leading to convictions" can satisfy the veracity element. See *Commonwealth* v. *Robinson*, 403 Mass. 163, 165 (1988); *Commonwealth* v. *Santana*, 403 Mass. 167, 170 (1988); *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 403 n.2, 406 (1989). Cf. *Commonwealth* v. *Bottari*, 395 Mass.

---

[4]In fact, these averments do not stand alone. There is corroboration through Curtis's surveillance. See *Commonwealth* v. *Parapar*, 404 Mass. 319, 323 (1989). The affidavit adds that the first informant told Curtis that Shea carried a gun and had a pistol permit. A check of the records had verified the permit in Shea's name.

[5]The court in *Rojas* suggested that veracity could be established where more details were provided about the circumstances of an arrest, e.g., what role the informant played in obtaining the arrest; whether the informant had been proved correct in his statement of a particular fact. See 403 Mass. at 486-487.

[6]Whether or not narcotics convictions. See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 19 n.4 (1975).

777, 783 (1985). Many decisions elsewhere support this position. See 1 LaFave, Search and Seizure § 3.3(b), esp. at 628-629 (2d ed. 1987).[7]

The defendant has gone on to attack both warrants as overbroad or indefinite, and executed unlawfully in the nighttime, but these contentions fail, as does the claim that the warrants were "stale" (in that connection, note especially the February 4 conversation).

(b) *Neutrality of the magistrate.* The defendant argues that, even if the affidavit established probable cause, the warrants were invalidated because the magistrate who issued them must be taken to have been fatally biased or lacking impartiality.

John A. Sullivan, an assistant clerk-magistrate, had issued the warrants on February 5. He was available after his regular working hours on February 8 to act on bail applications, and when the defendant, under arrest, was brought into the police station that evening, he released him on personal recognizance. Sullivan was paid no separate fee for issuing the warrants; that function fell within his usual duties as assistant clerk, for which he received a stated annual salary of $34,000. For setting bail after hours he receives $15 in accordance with G. L. c. 262, § 24.[8] By arrangement, Sullivan and a colleague act on bail on alternate days. Sullivan figured he received $12,000-$15,000 in § 24 fees in the course of a year.

The defendant charges Sullivan with a disqualifying conflict of interest because, in issuing a warrant, he creates a possibility of receiving $15 for bail duty. But his neutrality is

[7]As to the possible occasions on which a defendant may attack such averments of an affidavit and demand a hearing about their truth, see *Commonwealth* v. *Abdelnour*, 11 Mass. App. Ct. 531, 534-538 (1981). See also *Commonwealth* v. *Brzezinski*, 405 Mass. at 406-408.

[8]As stated in *Quinn* v. *State Ethics Comm'n*, 401 Mass. 210, 213 (1987): "Clerk magistrates act on bail applications as part of their duties and thus they are not subject to the claim [under G. L. c. 268A, § 7] that they have a financial interest in two State employment positions. When a clerk or assistant clerk acts on a bail application at a place of detention not during regular working hours, G. L. c. 276, § 58, authorizes a charge of the same fee that a bail commissioner may charge."

hardly compromised in the sense of *Connally* v. *Georgia*, 429 U.S. 245 (1977). For various contingencies are involved, among them, whether anyone will be arrested as a consequence of the execution of the warrant, whether an arrested person will claim bail before a judge rather than a bail commissioner, whether the arrestee will apply on a date when Sullivan is scheduled. So it is not reasonable to see the prospect of a fee as conditioning or influencing his action. Of course, there is no claim that Sullivan in fact acted in issuing these warrants with any attention to the possibility of a fee.

2. *Trial: contents of the nine bags.* The defendant makes what he has called a "technical" argument that the Commonwealth failed in the proof needed to establish that a sufficient number of the bags contained cocaine to aggregate a weight of the total contents of those bags in excess of 28 grams.[9] The respective positions of the defendant and the Commonwealth (each advanced with the help of an expert) may be summarized thus. *Defendant*: Only by "infrared" spectroscopy could it be proved that a sample contained cocaine. "Ultraviolet" spectroscopy would show only the concentration of a given compound in a sample. Samples from only five bags were subjected to infrared examination, all with positive results. *Commonwealth*: Where numerous suspected bags or other units are received for official analysis, all with substances evidently alike — as to color, consistency, packaging, smell, etc. — it is not necessary, and would be superfluous, to subject each bag to the infrared and ultraviolet tests. It is enough to make representative tests, here five infrareds and four ultraviolets; and this has been the practice. It was on this basis that the State police laboratory issued a certificate covering the nine bags; and, under the statute, G. L. c. 111, § 13, the certified statement about the contents must be accepted as prima facie evidence running through the case. See *Commonwealth* v. *Harvard*, 356 Mass. 452, 462-463 (1969). The trial judge, considering the conflicting proofs, including the experts' opinions, evidently ac-

[9]See G. L. c. 94C, § 32E(*b*)(1), as in effect prior to St. 1988, c. 124.

cepted the Commonwealth's view and found beyond a reasonable doubt that the contents of the nine bags were, as indicated, 30.9 grams, 37% pure cocaine. We see no basis here for reversal.

The defendant complains that, of the four worksheets of the laboratory analyst which were to be received from the Commonwealth by way of discovery, only three were produced; the fourth, related to the nine bags, was lost. The loss is regrettable, but there was nothing intentional about it. Compare *Commonwealth* v. *Light*, 394 Mass. 112, 114-115 (1985). Allowing for the most that could in reason be expected to turn up on the lost worksheet, there is no ground to believe that it could help to persuade the judge to accept the defendant's position about the tests, or to modify in any way his acceptance of the Commonwealth's position.

*Judgment affirmed.*