COMMONWEALTH *vs.* MARK A. LUCE.

No. 91-P-1406.

Middlesex. October 14, 1992. - February 4, 1993.

Present: BROWN, KASS, & GREENBERG, JJ.

*Search and Seizure*, Affidavit, Probable cause. *Constitutional Law*, Proba-
ble cause, Search and seizure. *Probable Cause. Practice, Criminal*,
Plea. *Evidence*, Admissions and confessions.

The affidavit in support of an application for a search warrant contained
sufficient specific information verified by police investigation to satisfy
the requirements set forth in *Aguilar* v. *Texas*, 378 U.S. 108 (1964),
and *Spinelli* v. *United States*, 393 U.S. 410 (1969), and the magistrate
was justified in issuing the search warrant. [106-110]

There was no basis in the record of criminal proceedings for the defend-
ant's claim that an affidavit in support of an application for a search
warrant included false statements made knowingly and intentionally or
with reckless disregard for the truth. [110-111]

Inculpatory postarrest statements of a criminal defendant, found by the
judge to have been voluntarily made after the defendant waived his Mi-
randa rights, were properly admitted in evidence at his trial. [111-112]


INDICTMENTS found and returned in the Superior Court
Department on October 25, 1988.

A pretrial motion to suppress evidence was heard by *Paul
A. Chernoff*, J., and the cases were tried before him.

*Michael J. Traft* for the defendant.

*Jennifer R. DeFeo* (*Daniel A. Less*, Assistant District At-
torney, with her) for the Commonwealth.

KASS, J. There were three informers upon whom the police
relied in applying for a search warrant. Whether their infor-
mation, in the aggregate, justified the issuance of a search
warrant is the principal question that the defendant raises on
his appeal from convictions of trafficking in more than 200
grams of cocaine (G. L. c. 94C, § 32E[*b*][4]) and illegal
possession of hypodermic needles (G. L. c. 94C, § 27[*a*]).

In addition, the defendant claims exculpatory information was intentionally withheld from the affidavit made in support of the application for a search warrant; that certain inculpatory statements should not have been received in evidence because induced by false promises of leniency; and that the government improperly backed away from a plea agreement. We resolve these issues against the defendant and affirm the judgments of conviction.

1. *Adequacy of the affidavit made in application for a search warrant.* The government's case rested primarily on evidence seized by police in a search made on September 29, 1988, of the defendant Luce's Stoneham apartment: 995.4 grams of cocaine; $29,000 in cash; thirty-two hypodermic needles and thirty-two syringes; an OHAUS triple beam scale; and steroids. Luce's position in a timely motion to suppress (further pressed by a motion to reconsider) and now on appeal is that none of the informers had sufficient basis of knowledge and indicia of reliability to justify a magistrate (in this case a District Court judge) in issuing a search warrant. See *Aguilar* v. *Texas*, 378 U.S. 108, 113-115 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 415-416 (1969); *Commonwealth* v. *Upton*, 394 Mass. 363, 374-376 (1985). Each informer met at least one of the requisite criteria established in those decisions, and the question to some degree is whether an informer who is infirm as to one criterion may be buttressed by a second or third informer who supplies the missing attribute but himself is deficient in the other criterion.

Black[1] was an informer whom Trooper Kiley, a member of the Middlesex County narcotics task force, had been cultivating for some time. Kiley had learned a good deal about Black; he was not an unknown tipster. Black had admitted to Kiley extensive involvement in narcotics distribution, particularly cocaine. Although Black claimed to have removed himself from active engagement in cocaine distribution, he had maintained, according to Kiley's affidavit, "social contact

---

[1]The names of the informers are pseudonyms.

with his narcotic[s] contemporaries of the recent past." Black provided Kiley with a list of persons with whom he had been involved in connection with cocaine distribution, including descriptions of how they worked. Several of those persons were known to Kiley, and he found Black's information to be accurate, current, and consistent with what he knew about the methods and operations of those drug dealers. Kiley further checked the information provided by Black with his circle of narcotics investigators, and they corroborated as accurate most of the information Black had supplied.

As for the defendant Luce, Black described him as a major cocaine trafficker who operated a distribution network out of his residence in Stoneham. Black had himself, during the preceding six months, completed large quantity purchases of cocaine from Luce at the rate of at least one a week. The last of those transactions had occurred within ten days. Within the past five days, in a series of conversations, Luce had told Black that he would be picking up a large quantity of cocaine in the middle of the week of September 25, 1988. Once the shipment was in, the two could arrange to complete another sale and purchase.

Those conversations were consistent with the manner in which Black and Luce did business. When the product was available, Luce would call, and he and Black would negotiate quantity, price, and meeting locations. Most commonly, the drug and money changed hands in Luce's apartment at 12C Mosley Park, Stoneham, during the evening or later. Within the past seven days (referring to the date of Kiley's affidavit), Black had been in Luce's apartment, which he described as a two-story townhouse, with a ground floor main entrance. On the occasion of that recent visit, Black had observed cocaine in the apartment, displayed by Luce as available for sale. Within the past five days, Black said, he had met Luce and Luce claimed to have procured a large supply of cocaine, a portion of which he would hold at his Stoneham place for Black to buy. Black said that, as he had not yet made a purchase, the cocaine reserved for him would still be

at Luce's Stoneham apartment. He gave Trooper Kiley the telephone numbers he used to get in touch with Luce.

There is sufficient specific information in Black's observations and his communications with the defendant to satisfy the "basis of knowledge" category of the *Aguilar-Spinelli* tests. See *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 30-31 (1989). Measured by the most common indicator of "veracity," a history of dispensing information to the government which led to convictions or seizure of narcotics,[2] Black was deficient as an informer; he had no such history. Moreover, the motion judge observed, Black's veracity qualification was further put in doubt by the seeming conflict between his announced retirement from drug traffic and his very recent buy from Luce. Seen in the light of less standard indicators, however, Black began to look better on the veracity meter. Trooper Kiley had, after all, verified much of the information furnished by Black about drug dealers other than Luce. Corroborative efforts by the police may boost to passing level an otherwise weak grade on the *Aguilar-Spinelli* tests. *Commonwealth* v. *Robinson*, 403 Mass. 163, 166 (1988). *Commonwealth* v. *Parapar*, 404 Mass. 319, 323 (1989). Black's veracity quotient is further enhanced by statements against his penal interest, his admissions of his own recent involvement with sizeable cocaine transactions. See *id.* at 322, and cases there cited. In this regard it is significant that Trooper Kiley not only knew the identity of his informer but had come to know Black reasonably well. Compare *Commonwealth* v. *Allen*, 406 Mass. 575, 579-580 (1990), in which the identity of an informer identified as informant C was not known to the police.

There were two other informers, whom we shall call Red and White. Red was a long-time informer, whose information during the eighteen months before the application for a search warrant had led to several convictions and seizures of drugs. He, thus, did well on the veracity test. See *Commonwealth* v. *Byfield*, 413 Mass. 426, 431 (1992). Red corrobo-

---

[2]See, e.g., *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 31 (1989); *Commonwealth* v. *Mendez*, 32 Mass. App. Ct. 928, 928-929 (1992).

rated that Luce dealt in cocaine and added that he, Red, had, indeed, engaged in five cocaine transactions with Luce, the most recent, however, having occurred six months earlier. Luce, Red told the police, had an established reputation within the "cocaine distributors grapevine" as a substantial dealer. Although strong on the veracity test, Red was tender on the "basis of knowledge" requirement. Information that Red had on the basis of his own observation about cocaine in the possesion of Luce for purposes of sale was relatively stale because it was six months old. The information given by Red was somewhat freshened by his report of a "recent" conversation with Luce, in which Luce invited Red to do cocaine business with him. Although that conversation was not attached to any date, when the information indicates engagement in protracted and continuous drug distribution, precise time is of less significance. *Commonwealth* v. *Fernandes*, 30 Mass. App. Ct. 335, 342 (1991).

White, the third informer, had also compiled a record of having supplied information to the police that led to the seizure of cocaine within the preceding year. See *Commonwealth* v. *Perez-Baez*, 410 Mass. 43, 46 (1991). He gave information to a United States Drug Enforcement Administration agent, with whom Trooper Kiley spoke, about Luce's cocaine distribution activity. White had not, however, bought from Luce for eight months. White knew Luce primarily as a dealer in Somerville, although White said Luce had told him his "stash pad" was in Stoneham. This information was in certain respects more seriously stale than that furnished by Red.

The defense has consistently attacked Trooper Kiley's affidavit on the ground that it rested on informers, each of whom was deficient in some respect under the *Aguilar-Spinelli* standards. Analysis discloses that those deficiencies are not so stark as the defense paints them. Black's lack of track record as a successful informer was considerably compensated for by the success of Kiley in verifying with the other informers and the narcotics agents what Black had told him about Luce. Although their transactions with Luce had

occurred some time previously, Red and White reported more recent conversations to the police which described Luce as active in narcotics trade and his Stoneham apartment as the home base of his operations.

Even assuming that each informer alone was vulnerable as not satisfying one of the two broad requirements prescribed by *Aguilar-Spinelli*, the strengths of Black's information reinforced what was weak in the information of Red and White, its lack of up-to-the-minute quality, and the overlapping information of Red and White supplied the factor otherwise absent as to Black, that he could be relied upon. What *Aguilar-Spinelli* requires is not the filling of pigeonholes but an affidavit which states information upon which a neutral and detached magistrate may make a determination of probable cause. That information can consist of mutually corroborative material, as was furnished in this case. The corroborating material must correspond in significant detail, but that requirement is satisfied here by the correspondence as to methods of operation and location of the operating base. See *Commonwealth* v. *Truax*, 397 Mass. 174, 178 (1986); *Commonwealth* v. *Rojas*, 403 Mass. 483, 488 (1988); *Commonwealth* v. *Parapar*, 404 Mass. at 320-321.

2. *Defense assertions of omissions in the affidavit and entitlement to* Franks *hearing.* The first motion to suppress the incriminating evidence seized in the search of Luce's apartment was denied January 30, 1990. A first motion for reconsideration of that ruling and its disposition require no comment. In January, 1991, the defendant again moved to reconsider the suppression ruling, this time on the ground that Thomas L. Doud, an agent of the United States Drug Enforcement Administration, who was alluded to in the search warrant affidavit, had omitted significant exculpatory information. The defense said it had developed through discovery that: a pen register telephone surveillance of Luce's numbers had yielded nothing of consequence; that drug purchase attempts by police agents had been unsuccessful; and that police surveillance of the defendant himself had failed to turn up anything incriminating.

The judge interrogated Agent Doud in camera because Doud had been the conduit for the information attributed to the informer we have called White. In so doing, the judge adhered to the procedures set out in *Commonwealth* v. *Amral*, 407 Mass. 511, 520-522 (1990), for balancing a defendant's right of confrontation with maintaining the anonymity of confidential informants. On the basis of his inquiry, the judge made findings that Agent Doud had no knowledge of an unsuccessful effort to buy drugs from Luce. He found that Doud was aware of the pen register and that this surveillance device registered calls by the defendant to individuals recognized by law enforcement officers as involved with narcotics. Doud, the judge found, was a percipient witness to Luce's appearance at the Stoneham apartment.

Nothing about the judge's findings, to which we owe the usual deference, suggests distortion in the information furnished to Trooper Kiley or in the affidavit in support of a search warrant which Kiley made. An affiant who sets out information adding up to probable cause to make a search is not bound to recite investigative efforts that did not pan out.

On appeal, the defense claims it was entitled to an evidentiary hearing and that the in camera hearing was unsatisfactory. It is sufficient to answer that when the judge undertook to conduct an in camera hearing, the defense made no objection or argument that it should be allowed to examine Agent Doud. Nor has the defendant on appeal identified any place in the record where he pressed on the trial judge the right to such a direct examination; the issue appears to have been invented on appeal. In any event, the record discloses no preliminary showing on behalf of the defendant, let alone a substantial one, that the affidavit included false statements made knowingly and intentionally, or with reckless disregard for the truth. See *Franks* v. *Delaware*, 438 U.S. 154, 155-156 (1978); *Commonwealth* v. *Blake*, 413 Mass. 823, 825-826 (1992).

3. *Admission of inculpatory statements by defendant.* Immediately after the police entered his premises with a search

warrant on September 29, 1988, Luce, who had been discovered with half a kilo of cocaine on his person, discussed cooperation with the police and benefits he might gain from cooperation. The trial judge found that Luce was informed of his Miranda rights and understood them. In later conversations with the government, Luce said he "moved" about one kilo per week to a preferred customer base of from five to ten people. The judge found that the defendant communicated voluntarily with the government. What Luce said did not become subject to exclusion merely because no plea bargain matured. The judge expressly found that the meetings between the defendant and his counsel and government officers did not constitute plea bargaining that would be inadmissible under Mass.R.Crim.P. 12(f), 378 Mass. 870 (1979). It was also dispositive of the defendant's motion to exclude his inculpatory statements that the motion was not accompanied by an affidavit as required by Mass.R.Crim.P. 13(a)(2), 378 Mass. 871 (1979). See *Commonwealth v. Samuel*, 398 Mass. 93, 94-95 (1986).

4. *Other points*. To be sure, had the government promised the defendant favorable treatment in return for information, resulting inculpatory statements might not be considered to have been made voluntarily. *Commonwealth v. McCauley*, 391 Mass. 697, 702 (1984). Here, however, the trial judge, after listening to the testimony of witnesses, found that no promise of that kind had been made. That is a resolution within the province of the trial judge and we do not disturb it. *Ibid*. We do not consider the argument of the defendant that it was error on the part of the trial judge to hold in abeyance a defense motion to dismiss based on asserted prosecutorial misconduct. The defendant did not object to that procedure at trial and may not now raise the point on appeal.

*Judgments affirmed.*