COMMONWEALTH *vs.* JEFFREY A. RUSSELL.

No. 97-P-1951.

Plymouth. November 5, 1998. - March 23, 1999.

Present: KASS, GILLERMAN, & BECK, JJ.

*Probable Cause. Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Probable cause, Affidavit. *Controlled Substances.*

An affidavit in support of a search warrant, containing reasonably contemporaneous and overlapping information from five informants, which was corroborated in part by independent police investigation, had the requisite level of knowledge and credibility to demonstrate probable cause for the issuance of the warrant [517-520], and the information was not stale in the circumstances [520].

In a criminal case, the judge did not abuse her discretion in declining to conduct an in camera hearing on the facts underlying information set forth in an affidavit in support of a search warrant, conformably with *Commonwealth* v. *Amral,* 407 Mass. 511, 522-523 (1990), where the defendant made no preliminary showing of the affiant's disregard for the truth. [520-521]

INDICTMENT found and returned in the Superior Court Department on January 29, 1991.

A motion to suppress evidence was heard by *Catherine A. White,* J., and the case was tried before *Cortland A. Mathers,* J.

*John D. Fitzpatrick* for the defendant.

*Michael E. Kiernan,* Assistant District Attorney, for the Commonwealth.

KASS, J. Jeffrey A. Russell was convicted on January 5, 1993, of trafficking in more than fourteen but less than twenty-eight grams of cocaine (G. L. c. 94C, § 32E[*b*]), and of doing so within a drug-free school zone (G. L. c. 94C, § 32J). He challenges the denial of a motion to suppress evidence obtained pursuant to a search warrant on the ground that the police affidavit supporting the finding of probable cause was insufficient

on its face or, in the alternative, that he was entitled to an in camera review of the facts underlying the affidavit conformably with *Commonwealth* v. *Amral*, 407 Mass. 511, 522-523 (1990). The affidavit in question, signed by Detective William Curtis of the Plymouth police department, relies heavily on information gathered from unnamed informants. While the affidavit is not a model of coherence, we conclude that the clerk-magistrate could reasonably have determined, by virtue of the informants' mutual corroboration and facts learned by independent police investigation, that probable cause existed to search Russell's residence. We further decide that a Superior Court judge who heard the motion to suppress did not abuse her discretion in denying Russell's request for an in camera hearing.

1. *Facts.* In the fall of 1989, an investigation culminated in a search warrant executed at what was thought to be Russell's residence, in Carver. Russell had apparently moved out of "the compound" a few days before the search. An informant had told Detective Curtis that Russell was trading stolen merchandise and selling drugs, and that one of Russell's "best customers" was John Harris.[1] According to the affidavit, Harris is a known drug user with a criminal record. The affidavit sets out information garnered from an array of confidential informants. What follows is the relevant text of the affidavit as it concerns these confidential informants, with corroborative facts learned from Curtis's independent investigation.

*Informant One:*

> "In early January I had conversation with Det[ective] Donahoe of the Carver police dept. At that time he told me that he had received information that Jeffery Russell was staying at his grandmother's house located at 62 Asiaf Way Plymouth. According to Donahoe, Russell's grandmother spends the winter in Florida and Jeffrey stays at the house."

*Informant Two:*

> "At this time I had conversation with a reliable informant whose information in the past has led to court convictions.

---

[1]This informant is referred to as CI 1A in the Commonwealth's brief and not labeled in the defendant's brief. Information concerning criminal activity at the Carver address is not relevant to the question of the sufficiency of this affidavit, which was submitted in support of a search warrant for another address in another town.

> At that time my informant told me that John Harris was still purchasing cocaine from Jeffrey Russell. He/She further told me that Russell was now living at his grandmother's house on Asiaf Way Manomet. He/She further stated that Harris had told him/her this within the last couple of days."

> "On January 8 1990 I received information from the above reliable informant that John Harris had purchased a 1984 Olds Cierra, bearing VIN 1G3AJ19E1EG356882 at Puritan Auto Sales in Kingston within the last week."

Curtis confirmed with the owner of Puritan Auto Sales that Harris did purchase the Oldsmobile on January 2, 1990. The affidavit also reported that the Oldsmobile was seen outside of the 62 Asiaf Way house, as were five other cars. One of those cars was registered to Russell. The other four were registered to Carver residents.

*Informant Three*:

> "In mid January 1990 I had conversation with Det[ective] Donahoe of the Carver police dept. At that time he told me that he had just spoken with an informant who told him that Jeffrey Russell was moving quantities of cocaine from his house at 62 Asiaf Way Plymouth. Donahoe stated that his informant has not yet led to court convictions but information received from this informant has been corroborated by Donahoe with regards to ongoing investigations in the town of Carver. Donahoe's informant told him that he/she has been present at 62 Asiaf Way when cocaine was sold by Russell. Donahoe's informant also told him that numerous subjects from Carver were going to Russell's Asiaf Way address to purchase cocaine."

*Informant Four*:

> "In late January 1990 I had conversation with another reliable informant. Information from this informant has led to numerous convictions in court in the past. At this time my informant told me that John Harris had bragged to him/her that he had been involved in ripping off an expensive diamond ring from the Kingston Mall earlier in the month. Harris told my informant that the ring was worth several thousand dollars and that he had already

gotten rid of it. My informant further told me that Harris told him/her that he had sold the ring to Jeffery Russell of Asiaf Way Manomet."

*Informant Five*:

"In early February 1990 I had conversation with Sgt. Skoog of the Carver police department. At that time she told me that she had just spoken with a reliable informant. She told me that her informant was a fine upstanding citizen with no criminal history to her knowledge. Sgt. Skoog told me that her informant told her that a subject named Jeffrey Russell who was formerly from Carver was now living [in] his grandmother's house at 62 Asiaf Way Manomet. Her informant further told her that Russell was selling cocaine from that location and had in his possession an expensive piece of jewelry which had been recently stolen. Her informant further told her that Russell was living with a female named Melissa McDonald at the Asiaf Way address."

Curtis confirmed by independent investigation that a ring, worth $9,000, had been "ripped off" on January 3, 1990, from Beldon's Jewelers in the Independence Mall in Kingston.

The affidavit concludes with this paragraph:

"On or about February 20 1990 I had conversation with the second mentioned reliable informant. At this time he/she told me that they had conversation with Jeffrey Russell of Asiaf Way Manomet within the last couple of days. At that time Russell told him/her that he had a diamond ring for sale at his house. He further stated that the diamond was approx 2.0 carats. My informant further told me that Russell stated that he [had] cocaine available for sale at his Asiaf Way residence."[2]

A search warrant based on the material we have described was signed by the magistrate on February 20, 1990, and the search executed on February 22, 1990. Officers found 17.4 grams of cocaine in five small packages and $2,130 in cash. Russell's motion to suppress evidence was denied on October 2, 1992.

---

[2]The phrase "second mentioned reliable informant" appears to refer back to the informant we call Informant Four.

2. *Background principles.* An application for a warrant that depends in significant part on information provided by confidential informants must satisfy the familiar two-pronged test of *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969), i.e., the affidavit supporting probable cause must inform the magistrate of "(1) some of the underlying circumstances from which the informant concluded that contraband was where he claimed it was (the basis of [the informant's] knowledge test), and (2) some of the underlying circumstances from which the affiant concluded that the informant was credible or the information reliable (the veracity test)." *Commonwealth* v. *Desper*, 419 Mass. 163, 166 (1994), quoting from *Commonwealth* v. *Warren*, 418 Mass. 86, 88 (1994). *Commonwealth* v. *Reyes*, 423 Mass. 568, 571 (1996).

None of the five informants relied upon in the affidavit, standing alone, satisfies both prongs of the *Aguilar-Spinelli* test. This is not necessarily fatal to the probable cause determination. While each test must be independently considered and satisfied, see *Commonwealth* v. *Upton*, 394 Mass. 363, 376 (1985), independent police corroboration or mutual corroboration of multiple informants may compensate for deficiencies in the individual sources. See *Commonwealth* v. *Parapar*, 404 Mass. 319, 323-324 (1989); *Commonwealth* v. *Luce*, 34 Mass. App. Ct. 105, 106-110 (1993); *Commonwealth* v. *Watson*, 36 Mass. App. Ct. 252, 255-256 (1994).

A reviewing court looks to whether the affidavit "states information upon which a neutral and detached magistrate may make a determination of probable cause." *Commonwealth* v. *Luce*, 34 Mass. App. Ct. at 110. "[T]he affidavit should be read as a whole, not parsed, severed, and subjected to hypercritical analysis." *Commonwealth* v. *Blake*, 413 Mass. 823, 827 (1992).

3. Aguilar-Spinelli *deficiencies and compensatory corroboration.* Informants One and Five are the most infirm; each fails both prongs of the *Aguilar-Spinelli* test. One's information (that Russell was now living in his grandmother's house at 62 Asiaf Way in Plymouth), however, was fairly basic and, more importantly, was corroborated by every other informant in the affidavit. Similarly, Five's information that Russell was selling cocaine came also from informants Two, Three, and Four. Five's information that Russell had a stolen ring for sale came also from informant Four. That mutual corroboration cured the deficiencies of the informants taken individually.

Informants Two and Four are of established credibility, but each lacks a sufficient basis of knowledge. Informant Two's allegation that Russell was selling cocaine at Asiaf Way was corroborated by informants Three, Five, and, on the day of the determination of probable cause, by Four. Two also gave fairly detailed information about a car bought by Harris, whom he described as a cocaine customer of Russell's. That information did not contribute much to the probable cause determination, but its detail (notably, where the car was bought and its vehicle identification number) and the fact that it was corroborated by Detective Curtis strengthens the conclusion that Two knew what he or she was talking about. See *Commonwealth* v. *Watson*, 36 Mass. App. Ct. at 256. Contrast *Commonwealth* v. *Avalo*, 37 Mass. App. Ct. 904, 907 (1994) (corroboration of innocuous details alone is insufficient to establish probable cause).

Informant Four gave Detective Curtis two separate, consistent tips about the stolen ring — in late January, that Russell had possession of a ring stolen from a mall in Kingston, and on February 20, that Russell claimed to have a ring for sale at his residence. The information that a ring was stolen from the Kingston Mall was confirmed by Detective Curtis's investigation. The fact that the ring ended up in the hands of Russell was corroborated by informant Five. Contrast *Commonwealth* v. *Reddington*, 395 Mass. 315, 324 (1985) (mere repetition of rumor, with no independent police corroboration, does nothing to meet the basis of knowledge test).[3]

Informant Three, who was present at the time cocaine was sold at Russell's residence, passes the basis of knowledge test,

---

[3]Informants Four and Two both tell Curtis about statements made by Harris. Harris's reliability is not established in any way. Informant Four also relates a conversation with Russell. Russell's alleged statements, like those of Harris, do not meet the test for statements against penal interest, nor are they verifiable in any other way. See *Commonwealth* v. *Allen*, 406 Mass. 575, 579 (1990). Such multiple-hearsay tips weaken the score of Two and Four on the basis of knowledge test. See *id.* at 578. As discussed above, these informants' deficiencies may be compensated for by corroboration of their information. When an informer makes a statement against penal interest (e.g., admits to purchasing drugs at a certain house), that statement is factored into the informer's veracity test. See *Allen*, 406 Mass. at 579. Here, the truth of a third person's statement goes to the informer's basis of knowledge. In a sense, Two's basis of knowledge quotient is weak because its source is only Harris's word, which is of unproven reliability. The reputation or status of Harris as a drug user with a criminal record may be factored into a determination of probable cause. See *Commonwealth* v. *Snow*, 363 Mass. 778, 784 (1973).

but fails the veracity test.[4] See *Commonwealth* v. *Desper*, 419 Mass. at 166 (personal observation of criminal activity satisfies basis of knowledge test). Three's deficiency as a reliable informant is compensated for by the fact that the information Three gave, that Russell was selling cocaine, was corroborated by informants Two, Four, and Five.

The case for probable cause would have been significantly strengthened if the police had attempted a controlled buy. See *Commonwealth* v. *Warren*, 418 Mass. at 89; *Commonwealth* v. *Desper, supra* at 168; *Commonwealth* v. *Watson*, 36 Mass. App. Ct. at 257 n.6. Such an investigatory tactic, however, is not required. The *Aguilar-Spinelli* safeguards are satisfied when, as here, multiple informants provide the police with mutually corroborative and complementary tips, and independent police investigation confirms the tips in significant detail. *Commonwealth* v. *Watson, supra* at 256. See *Commonwealth* v. *Parapar*, 404 Mass. at 323-234; *Commonwealth* v. *Luce*, 34 Mass. App. Ct. at 108-110. Contrast *Commonwealth* v. *Rojas*, 403 Mass. 483, 488 (1988) (motion to suppress properly granted where tips did not correspond in significant detail). Russell's brief properly reminds us that the spreading of "casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation" is insufficient to establish probable cause. *Spinelli* v. *United States*, 393 U.S. at 416. Here, however, consistent, reasonably contemporaneous tips, overlapping with one another, and confirmed in part by independent police work, look less like rumor mongering and more like the pieces of a puzzle fitting together. A reasonable and detached magistrate, taking a commonsense view of the affidavit as a whole, would reasonably have thought it probable that Russell was living at 62 Asiaf Way, that he was selling cocaine from that address, and that he had in his possession a stolen diamond ring.

The Curtis affidavit is far from perfect. It requires rather intense concentration to identify what is relevant and to determine which informant the affiant is referring to and whether

---

[4]The affidavit states that Detective Donahoe of the Carver police department had used this informant in the past and the tips "had been corroborated by Donahoe with regards to ongoing investigations in the town of Carver." This is not sufficient to establish the informant's reliability. Compare *Commonwealth* v. *Amral*, 407 Mass. at 515; *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 31 (1989).

the various informants, taken together and corroborated by police investigation, had the requisite level of knowledge and credibility to justify the issuance of a warrant. But strict adherence to the requirements of *Aguilar-Spinelli* is intended to protect the public from searches based on unreliable informers and unreliable information, not from sub-par expository writing by law enforcement officers. See *Commonwealth* v. *Amral*, 407 Mass. at 515-516.[5]

4. *Staleness.* Russell contends that much of the information contained in the affidavit, coming as it does a month or more before the finding of probable cause, was stale. Some cases have held that even fairly short time lags preclude a finding of probable cause. See *Commonwealth* v. *Zayas*, 6 Mass. App. Ct. 931, 931 (1978); *Commonwealth* v. *Malone*, 24 Mass. App. Ct. 70, 73 (1987). Here, however, a tip was received on February 20, 1990, the day the magistrate signed the application for a warrant and two days before the search was conducted. Since this information repeated much of what had been learned earlier, in January, the January information was freshened and the information in the affidavit as a whole was not stale. See *Commonwealth* v. *Luce*, 34 Mass. App. Ct. at 109. Contrast *Commonwealth* v. *Reddington*, 395 Mass. at 322-323 (January tip stale in August). It is also true that "when the information indicates engagement in protracted and continuous drug distribution, precise time is of less significance." *Commonwealth* v. *Luce*, 34 Mass. App. Ct. at 109. See *Commonwealth* v. *Alvarez*, 422 Mass. 198, 205 (1996).

5. *Request for an in camera* Amral *hearing.* Russell's motion to suppress was apparently denied without an evidentiary hearing. Russell included in the motion a request for an in camera hearing to look into whether information contained in the affidavit was false or misleading. In support of his request, Russell points to three affidavits submitted with his motion to suppress, two from Russell himself and one from Harris. Those affidavits contradict much of what, according to Detective Curtis, had been attributed to Harris and Russell by informants Two and Four.

If a defendant has made a showing that "cast[s] a reasonable

---

[5]Detective Curtis was a player in *Commonwealth* v. *Reddington*, 395 Mass. at 317; *Commonwealth* v. *Allen*, 406 Mass. at 576; *Commonwealth* v. *Shea*, 28 Mass. App. Ct. at 29; and *Commonwealth* v. *O'Brien*, 30 Mass. App. Ct. 807, 808 (1991), all of which involve application of the *Aguilar-Spinelli* criteria.

doubt on the veracity of material representations made by the affiant concerning a confidential informant," that defendant is entitled to an in camera hearing to determine whether an affiant made false statements in reckless disregard for the truth. *Commonwealth* v. *Amral*, 407 Mass. at 522. The decision to grant such a hearing rests in the sound discretion of the trial judge. *Ibid.*

The motion judge did not abuse her discretion. She was not required to credit the affidavits of Harris and Russell. See *Commonwealth* v. *Ramos*, 402 Mass. 209, 215 (1988). Nothing in the record gives any indication that Curtis knew or should have known that the conversations reported by the informants did not happen. In *Commonwealth* v. *Nine Hundred & Ninety-Two Dollars*, 383 Mass. 764, 774 (1981), the party seeking a hearing on the veracity of an affidavit conceded that "he was not claiming that the affiant did other than to state truthfully what informants had told him and other police officers." In those circumstances, there was no preliminary showing of the affiant's disregard for the truth. *Ibid.* Similarly, the sworn statements of Russell and Harris make no allegation of fabrication or reckless disregard on the part of Curtis.

This is not a case analogous to *Commonwealth* v. *Ramirez*, 416 Mass. 41 (1993), or *Commonwealth* v. *Lewin*, 405 Mass. 566 (1989), in which suspiciously frequent reliance upon one informant gave rise to an inference of perjurious and fraudulent conduct by police officers. This is also not a case like *Commonwealth* v. *Pignato*, 31 Mass. App. Ct. 907 (1991), in which an affidavit filed by a person claiming to be the confidential informant refuted statements attributed to him by the police affiant.

The judge's denial of Russell's request for an in camera hearing was not an abuse of discretion.

*Judgments affirmed.*