## COMMONWEALTH *vs.* JOHN M. RICE.

No. 98-P-508.

Norfolk. January 8, 1999. - August 18, 1999.

Present: ARMSTRONG, PERRETTA, & LAURENCE, JJ.

*Constitutional Law,* Search and seizure, Probable cause. *Search and Seizure,* Affidavit, Probable cause. *Probable Cause. Controlled Substances.*

Independent police corroboration and mutual corroboration of particularized details in information provided by two informants, as appearing in an affidavit in support of an application for a search warrant, compensated for deficiencies, if any, in the informants' basis of knowledge or veracity, and there was probable cause for the search warrant to issue. [588-589]

Information set out in an affidavit in support of a search warrant, relating three tips over a fifteen-month period along with a corroborating independent police investigation, that culminated in a controlled buy "within the past month" of the date of the affidavit, was not demonstrated to be insufficiently contemporaneous with the application to render the warrant invalid as based on stale information. [589-592]

INDICTMENTS found and returned in the Superior Court Department on May 21, 1997.

A pretrial motion to suppress evidence was heard by *Gordon L. Doerfer,* J.

An application for an interlocutory appeal was allowed by *John M. Greaney,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Dante Angelucci, Jr.,* Assistant District Attorney, for the Commonwealth.

*Louis A. Cassis* for the defendant.

ARMSTRONG, J. On March 14, 1997, police officers executed a search warrant at a garage rented by the defendant, John Rice, at 5 Cottage Court in Norfolk. Pursuant to the warrant, issued two days earlier, police discovered eighty-one grams of cocaine, three bags of crack cocaine, over five pounds of marijuana, a

variety of other controlled substances, and drug-related paraphernalia. Based on the seized evidence, a grand jury indicted the defendant on multiple counts of crimes under G. L. c. 94C,[1] including possession, possession with intent to distribute, and trafficking (as to cocaine only). In a pretrial suppression motion, the defendant asserted that there was no probable cause to issue the warrant because the underlying police affidavit was based on information that (1) was provided by unnamed informants whose basis of knowledge and veracity were not shown, and (2) was stale by the time of the warrant application. The Superior Court allowed the motion based solely on staleness. A justice of the Supreme Judicial Court allowed the Commonwealth to take an interlocutory appeal.

We confine our review of a probable cause finding to the affidavits supporting the warrant application. See *Commonwealth v. Allen*, 406 Mass. 575, 578 (1990), and cases cited. In the sole affidavit here, dated March 12, 1997, Norfolk police Sergeant Jonathan Carroll set out details of tips from three confidential informants, a controlled buy, and his own investigations.

(i) *Unnamed informant.* Sergeant Carroll's affidavit stated that in November of 1995, a police colleague in Franklin related a tip from an informant known to him to the effect that a man named John Rice "was selling marijuana and cocaine" from a rented garage on Cottage Court in Norfolk, and that the tipster had seen these drugs there, and "knew people who purchased these drugs from Rice." The informant also indicated that John Rice lived in Franklin, was employed at the Wrentham State School, and worked on old cars at the garage.

(ii) *"Joe."* In March of 1996, Sergeant Carroll spoke with Joe (a pseudonym), a known informant who within two months of Carroll's affidavit had provided information leading to a seizure of drugs. Joe told Carroll that John Rice, a man some fifty years in age and employed at the Wrentham State School, rented a garage from the Cabbages at 5 Cottage Court, Norfolk, and worked on cars there. Joe stated that he had been in the upstairs office of the garage with friends when they bought cocaine from Rice. According to Joe, Rice had the cocaine in a "small metal Sucrets container" in his pocket, and also sold marijuana stored in a "green .50 caliber ammo-type container" in the office by his desk. Joe drew Carroll a sketch of the office,

---

[1]There was also an indictment, under G. L. c. 148, § 39, for the defendant's unlawful possession of fireworks found on the premises.

showing the locations of the stairs, desk, door, and ammunition container.

(iii) *"Cindy."* In December of 1996, Sergeant Carroll met with Cindy (a pseudonym), an acknowledged drug user whose identity was known to Carroll. Cindy told him that she had bought cocaine and marijuana from John Rice, a Franklin resident employed at the Wrentham State School, at the garage at 5 Cottage Court that he rented from the Cabbages and where he worked on cars. She described Rice's carrying of cocaine in "a small metal tin box" in his pocket and storing of "usually" about a pound of marijuana in a "green, larger metal box" by his desk in the garage's upstairs office. She had seen "baggies" on the desk, and she stated that Rice used a key-chain scale to weigh marijuana and a digital scale to weigh cocaine in the office. Cindy provided Rice's telephone number at the garage and a sketch of Rice's office, which matched that made earlier by Joe. She also stated that Rice had sold her drugs in the past by delivering them to set locations.

(iv) *Independent investigation.* After his Franklin colleague's tip, Carroll investigated the street in question. It had only one house, listed in the Norfolk street census to a Mr. and Mrs. Cabbage at 5 Cottage Court. A detached garage stood next to the house. The phone number Cindy provided was listed as a business number for " 'J. Rice,' 5 Cottage Ct., Norfolk." The Registry of Motor Vehicles confirmed that John M. Rice was born August 30, 1944, resided in Franklin, and had a driver's license and several vehicles registered to him, two of which Carroll observed at 5 Cottage Court.

(v) *Controlled buy.* "Within the past month" of Carroll's affidavit, Cindy participated in a controlled buy of drugs at the Cottage Court garage. Under visual surveillance by police except while inside the garage, she entered without drugs, with a certain sum of money, and emerged with a glassine bag containing marijuana. The amount of marijuana, according to Sergeant Carroll's experience (sixteen years), was consistent with the amount of money spent. Cindy told Carroll that she purchased the marijuana from John Rice.

1. Aguilar-Spinelli *challenge.* The judge did not (and could not properly) find fault with the affidavit under the familiar "basis of knowledge" and "veracity" tests of *Aguilar* v. *Texas*, 378 U.S. 108, 114 (1964), and *Spinelli* v. *United States*, 393 U.S. 410, 415 (1969). See *Commonwealth* v. *Upton*, 394 Mass.

363, 375 (1985). Whatever deficiencies may be claimed as to each individual informant's ability to satisfy both tests, the controlling principle in this case is that "independent police corroboration or mutual corroboration of multiple informants may compensate for deficiencies in the individual sources." *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 513, 517 (1999). What is striking here is the degree of mutual corroboration in highly particularized details (see *Commonwealth* v. *Nowells*, 390 Mass. 621, 627 [1983]; *Commonwealth* v. *Desper*, 419 Mass. 163, 167 [1994]; *Commonwealth* v. *Russell*, 46 Mass. App. Ct. at 517-519), coupled with police corroboration, not only through innocuous facts (see *Commonwealth* v. *Avalo*, 37 Mass. App. Ct. 904, 907 [1994]), but also a controlled buy. See *Commonwealth* v. *Blake*, 413 Mass. 823, 827-828 (1992); *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 428 (1995); *Commonwealth* v. *Padilla*, 42 Mass. App. Ct. 67, 71 (1997). Joe and Cindy provided identical information on the following points: (1) the defendant's identity; (2) his dealing of drugs from the garage at Cottage Court; (3) specific drugs he was selling (marijuana and cocaine); (4) the location and types of containers wherein the defendant stored the drugs; (5) the layout of the office where the defendant sold drugs; (6) his place of work; (7) his rental of the garage from the Cabbages; and (8) his working on cars at that location. The unnamed informant also corroborated points (1), (2), (3) and (8). Sergeant Carroll's own investigation corroborated points (1) and (7) and, through the controlled buy, point (2).

2. *Staleness.* Of more concern is the issue that troubled the judge: whether Carroll's affidavit set out "facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Commonwealth* v. *Atchue*, 393 Mass. 343, 349 (1984), quoting from *Sgro* v. *United States*, 287 U.S. 206, 210 (1932). The informants did not specify when they made their observations (see *Commonwealth* v. *Atchue, supra* at 349; *Commonwealth* v. *Morton*, 26 Mass. App. Ct. 949, 950 [1988]), but the use of the present tense in the tips suggests substantial contemporaneity with the dates on which the tips were provided. See *Commonwealth* v. *Javier*, 32 Mass. App. Ct. 988, 988-989 (1992). Moreover, the controlled buy, occurring on a known date after the tips, had the effect of "updating" the freshness of the earlier tips to the date of the buy. See *Commonwealth* v. *Spano*, 414 Mass. 178, 185 (1993); *Commonwealth* v. *Russell*, 46 Mass. App. Ct. at 520.

The defendant makes much of the fact that the controlled buy was described in the affidavit as having occurred only "within the past month." See *Commonwealth* v. *Zayas*, 6 Mass. App. Ct. 931, 931 (1978); *Commonwealth* v. *Malone*, 24 Mass. App. Ct. 70, 73 (1987). The ambiguity of the quoted phrase makes it proper to assume that the buy occurred on the most remote date described by that language. See 2 LaFave, Search & Seizure § 3.7(b), at 358-359 (3d ed. 1996). We assume (for purposes of decision) the worst: that the buy occurred on February 1, 1997, six weeks before the warrant issued.

Were the buy the only information available, such an isolated transaction would normally be considered stale six weeks later, for it is well settled that narcotics are readily consumed or distributed so that probable cause to search for them rapidly dwindles. See *Commonwealth* v. *Zayas*, 6 Mass. App. Ct. at 931; *Commonwealth* v. *Gates*, 31 Mass. App. Ct. 328, 332 (1991). Where conduct is shown to be continuing, however, the passage of time becomes less important and staleness may be overcome. See *Commonwealth* v. *Vynorius*, 369 Mass. 17, 25 (1975); *Commonwealth* v. *Reddington*, 395 Mass. 315, 323-324 (1985).

Here, the affidavit averred ongoing activity over some fifteen months from November, 1995 (first tip), through February, 1997 (controlled buy). "The most important [factor] . . . of continuity is the number and quality of observations which seek to establish a continuing criminal activity." *Commonwealth* v. *Reddington*, 395 Mass. at 324, quoting from Comment, A Fresh Look at Stale Probable Cause: Examining the Timeliness Requirement of the Fourth Amendment, 59 Iowa L. Rev. 1308, 1313 (1974). The defendant takes issue with both variables here. On the quality scale, the unnamed informant's story by itself did not rate high, but the confirming stories of Cindy and Joe, reinforced with the controlled buy, gave credence to the story of the unnamed informant. The quality score is high. Contrast *Commonwealth* v. *Reddington*, 395 Mass. at 323-325 (eight low quality observations failed test); *Commonwealth* v. *Malone*, 24 Mass. App. Ct. at 73-74 (insufficient corroboration). On the number scale, the four observations (including the controlled buy),[2] although not as numerous as in *Commonwealth* v. *Spano*, 414 Mass. at 184-185 (over twenty-five drug buys),

---

[2] Counting the observations as four is probably overly favorable to the defendant. It is a fair inference that Cindy witnessed several sales, based on

and *Commonwealth* v. *Blye*, 5 Mass. App. Ct. 817, 817-818 (1977) (seventeen housebreaks), were in our view of sufficient number and quality to show a continuous criminal enterprise. Compare *Commonwealth* v. *Vynorius*, 369 Mass. at 25 n.10 (two drug buys plus police knowledge of defendant's reputation).

There must be a natural limit to the gap in time between the latest information and a warrant's issuance that may fairly be bridged by evidence of prior continuous criminal activity. Given the duration and nature of the enterprise, the six weeks at issue here does not exceed that limit. To be sure, we have found (and are referred to) no Massachusetts decision in which the latest observation of continuous drug activity preceded the warrant by as much as six weeks. Typical "continuous activity" cases in the drug area are *Commonwealth* v. *Alvarez*, 422 Mass. 198, 205 (1996) (one and one-half weeks), and *Commonwealth* v. *Fernandes*, 30 Mass. App. Ct. 335, 341-342 (1991) (seven days). In cases involving movable items other than drugs, far longer gaps have been filled. See *Commonwealth* v. *Blye*, 5 Mass. App. Ct. at 817-818 (four months; chainsaws); *Commonwealth* v. *Scanlan*, 9 Mass. App. Ct. 173, 180-181 (1980) (three months; scanner radio). Other courts considering continuing narcotics operations have likewise spanned information gaps approaching or exceeding six weeks. See, e.g., *United States* v. *Campbell*, 732 F.2d 1017, 1019 (1st Cir. 1984) (observations in "July, August, and September"; November warrant); *United States* v. *Fama*, 758 F.2d 834, 838 (2d Cir. 1985) (five weeks); *United States* v. *Wagner*, 989 F.2d 69, 74-75 (2d Cir. 1993) (six-week old buy; probable cause if linked to continuous activity); *United States* v. *Cannon*, 29 F.3d 472, 478 (9th Cir. 1994) ("several months"); *United States* v. *Derman*, 23 F. Supp. 2d 95, 99 & n.4 (D. Mass. 1998) (forty-seven days); *Smith* v. *State*, 438 So. 2d 896, 897-898 (Fla. Dist. Ct. App. 1983) (thirty-six days); *People* v. *Clarke*, 173 A.D.2d 550, 550 (N.Y. 1991) (forty-eight days); *Tosh* v. *State*, 736 P.2d 527, 529 (Okla. Crim. App. 1987) (thirty-five days). In our view, the affidavit provided probable cause to believe that the defendant consistently sold certain drugs in the same manner and location for fifteen months and

---

the degree of detail she provided, her known drug use, and her statement that Rice "usually" kept a pound of marijuana in the metal box. Likewise, the unnamed informant's reference to the defendant's "selling" of marijuana and cocaine suggested more than a single occasion.

would still be in business there, along with the trappings of his trade, a month and one-half later.

Accordingly, we vacate the order suppressing the seized evidence and remand the case to the Superior Court for further proceedings.

*So ordered.*