COMMONWEALTH *vs.* MICHAEL RAMIREZ.

No. 01-P-1108.

Essex. December 5, 2002. - February 27, 2003.

Present: PORADA, KAPLAN, & GREEN, JJ.

*Controlled Substances. Narcotic Drugs. Practice, Criminal,* Required finding.

At the trial of a criminal complaint charging the defendant with unlawful possession of a class B substance (cocaine) with intent to distribute in violation of G. L. c. 94C, § 32A(*a*), the evidence was sufficient to permit a rational jury to infer that two unrecovered and untested bags of white powder, which the defendant had exchanged for money and which the defendant's companion had given to him from a black box, contained cocaine, where an undercover police officer, when purchasing from the defendant's companion two bags of white powder that came from that same box, had observed six other bags of white powder in the box; where the jury could infer that three bags of white powder recovered from the defendant's companion at the time of his arrest also came from that box; and where the two untested bags appeared to be of the same weight, color, and packaging as those five bags, all of which tested positive for cocaine. [477-478]

COMPLAINT received and sworn to in the Peabody Division of the District Court Department on April 21, 1999.

The case was tried before *Santo J. Ruma,* J.

*David J. Barend* for the defendant.

*Catherine Langevin Semel,* Assistant District Attorney, for the Commonwealth.

PORADA, J. The defendant appeals from his conviction of unlawful possession of a class B substance (cocaine) with intent to distribute in violation of G. L. c. 94C, § 32A(*a*). The sole issue on appeal is whether the trial judge's denial of his motion for a required finding of not guilty was in error because the Commonwealth failed to prove that the substance he allegedly possessed was in fact cocaine. We affirm.

We summarize the evidence in the light most favorable to the

Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). On April 8, 1999, Detective James Donovan of the Saugus police department went to a bar called Greg's Lounge for an undercover narcotics buy. Donovan purchased two bags of cocaine, which he identified as "two 40's," from Julio Brito for eighty dollars. On April 15, 1999, Donovan returned to Greg's Lounge with the intention to purchase more cocaine from Brito. When Donovan approached Brito for the buy, Brito was handed a black magnetic key box by his companion, Billy Joe Aia, from which Brito removed two bags of cocaine and handed them to Donovan in exchange for eighty dollars. Donovan noticed "six other 40's" in the black box. Donovan remained in Greg's Lounge with Brito and Aia for the next twenty to thirty minutes. During that period, he observed the defendant conduct three transactions. In the first one, he saw the defendant walk up to Brito. Brito handed the defendant a bag of white powder, which he obtained from the black box. The defendant then handed the bag, in exchange for some money, to a tall white male wearing a black baseball cap. The defendant gave the money to Brito, who in turn handed it to Aia. In the second transaction, Aia handed the black box to Brito, who removed a bag containing a white powdery substance and gave it to the defendant, who in turn exchanged it for money with a man sitting by the bar. The defendant gave the money to Brito, who gave it to Aia. In the third transaction, Donovan saw the defendant take something out of his coat pocket and exchange it with a woman for money, which the defendant gave to Brito. Donovan acknowledged that he did not know exactly what was contained in the bags sold by the defendant, but stated that they contained a white powdery substance and came out of the same box from which he purchased cocaine. Donovan believed the bags sold by the defendant contained cocaine.

Donovan then left the bar and relayed what had transpired in the bar to other police officers who were conducting the surveillance of Greg's Lounge. Those police officers then entered the bar. Upon the police officers' entry, the defendant was observed kneeling on the floor of the bar with the black box, which was now empty, in front of him. Two of the officers testified that he appeared to be hiding something. The defendant was pat frisked,

but the police did not recover any contraband from his person. Brito was arrested. Cash and three bags containing a white powder were found on his person. None of the items that the defendant exchanged for money with the three individuals was recovered.

The two bags purchased by Donovan from Brito on April 15 and the three bags recovered from Brito at the time of his arrest were indistinguishable in that they all contained a white powdery substance, were all approximately the same weight and were packaged in "the same way." All five bags tested positive for cocaine and the cocaine and certificates of analysis were entered in evidence.

The defendant argues that this evidence is insufficient to prove that the bags the defendant allegedly possessed contained cocaine, because no substances were recovered from his person or from the persons to whom he allegedly distributed drugs and thus no analysis of those substances was ever performed. Without such an analysis, the defendant claims, no rational trier of fact could conclude that any substance possessed by him was actually cocaine. We disagree.

Based on the evidence presented, we conclude that a rational fact finder could find that the two unrecovered and untested bags of white powder, which the defendant exchanged for money and which Brito gave to the defendant from the black box, were two of the "six other 40's" that Donovan had observed in the black box when he purchased the "two 40's" from Brito that came from the black box. A rational fact finder could also infer that the three bags recovered from Brito at the time of his arrest also came from that black box, which lay empty on the floor when the police entered the lounge, because they were indistinguishable in weight, color and packaging from the "two 40's" purchased that day by Donovan. Because two of the untested bags of white powder distributed by the defendant came from the same container as the five recovered bags of white powder, and appeared to be of the same weight, color and packaging as those five bags, all of which tested positive for cocaine, we conclude that a rational fact finder could infer that the two untested bags also contained cocaine. See *Commonwealth* v. *Shea*, 28 Mass. App. Ct. 28, 33-34 (1989)

(where a representative sample of alleged narcotics tested positive, the jury were allowed to infer that the remaining untested materials were also narcotics). The motion for a required finding of not guilty was properly denied.

*Judgment affirmed.*